UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

DARRILL DUPREE,

               Plaintiff,                    04 CV 0992 (RJH)

- against -                      **MEMORANDUM OPINION AND ORDER**

CITY OF NEW YORK, et al,

               Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Plaintiff Darrell Dupree brings this action pursuant to 42 U.S.C. § 1983 against the City of New York, the New York City Department of Corrections (the "City DOC"), and New York State Parole Officer Flinora Pough for false imprisonment and due process violations stemming from his detention in the City DOC facility on Rikers Island following his arrest on a state parole warrant. Defendant City has moved for summary judgment.[1] For the following reasons, this motion is granted.

**BACKGROUND**

The following facts are uncontested unless otherwise noted. Plaintiff was sentenced for burglary in state court, Queens County, New York, in August 1995 and attempted burglary in state court, Richmond County, New York, in February 1996. (Compl. ¶ 7.) He was released on

---

[1] It is well-settled law that the DOC is a non-suable entity. *See, e.g.*, *Mobley v. O'Gara*, 2006 WL 197185, at *7 (E.D.N.Y. Jan. 23, 2006), *Echevarria v. Dep't of Correctional Serv.*, 48 F. Supp. 2d 388, 391 (S.D.N.Y. 1999) (citing Chapter 17, § 396 of the New York City Charter, which provides that "[a]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the City of New York and not in that of any agency, except where otherwise provided by law").

parole on February 14, 2002, subject to supervision by the New York State Division of Parole, and his maximum parole expiration date was March 18, 2003. (*Id.* at ¶¶ 8-9.) The State Division of Parole declared plaintiff in violation of the terms of his parole on January 30, 2003, and that day Senior Parole Officer Pough issued Parole Warrant #371358. (Parole Violation of Release Report, Ex. B to the Declaration of Michael Chestnov ("Chestnov Decl.").) At the time the warrant was issued, the maximum expiration date of plaintiff's parole was March 18, 2003.[2] (Compl. ¶ 9.)

Plaintiff was arrested on March 4, 2003, and held pursuant to the state warrant on Rikers Island in the custody of the City DOC; the Division of Parole lifted the warrant on May 12, 2003 and the plaintiff was released from DOC custody on that date. (Defs.' 56.1 Statement ¶¶ 8-10, 12-14.) State parole violators who are to be held beyond their original maximum expiration dates are provided with both a preliminary and final parole revocation hearing before the state parole board.[3] Plaintiff waived his preliminary parole revocation hearing on the same day of his arrest.[4] (Chestnov Decl., Ex. H) The City DOC produced the plaintiff for his final parole revocation hearing on two occasions: March 14, 2003 and April 24, 2003. (Chestnov Decl.,

---

[2] According to the Violation of Parole Release Report (Chestnov Decl., Ex. B), plaintiff still owed three months and one day on his state sentence.

[3] As an aside, the Second Circuit examined whether the State of New York's processes for parole revocation met minimum due process requirements in *Calhoun v. New York State Division of Parole Officers*, 999 F.2d 647, 653 (2d Cir. 1993) (concluding that the preliminary hearing, final revocation hearing, and appeal process provided in New York to parole violators who are to be kept beyond their original maximum expiration date "provide an adequate opportunity to be heard").

[4] Whether these adjournments were requested by the Division of Parole or by plaintiff himself is not clear. New York law provides that "[i]f a finding of probable cause is made pursuant to this subdivision either by determination at a preliminary hearing or by the waiver thereof [then final] [r]evocation hearings shall be scheduled to be held within ninety days of the probable cause determination. However, if an alleged violator requests and receives any postponement of his revocation hearing, or consents to a postponed revocation proceeding initiated by the board, or if an alleged violator, by his actions otherwise precludes the prompt conduct of such proceedings, the time limit may be extended." N.Y. Exec. Law § 259-i(2)(c) (McKinney 2001).

Exs. G and F; Defs.' 56.1 Statement ¶¶ 12-13.) For reasons that are unknown from the record before the Court, these hearings were adjourned, and a date was set for May 29, 2003. (Chestnov Decl. Ex. F) Defendant's assertion, which plaintiff has not controverted, is that the City DOC has no role in the scheduling, adjournment or conduct of State Parole Board hearings; its only role is to produce prisoners in its custody on scheduled dates. *See* N.Y. Exec. Law § 259-i (describing the notice provisions and procedures used in connection with revocation hearings, and noting that a "hearing officer designated by the board of parole" will conduct preliminary revocation hearings while "a presiding officer who may be a member or a hearing officer designated by the board" will conduct final hearings); *id.* at § 259-i (2)(b) ("Persons presumptively released, paroled, conditionally released or released to post-release supervision from an institution under the jurisdiction of the department of correctional services … shall, while on [parole] … be in the legal custody of the division of parole until expiration of the maximum term or period of sentence, including any period of post-release supervision, or return to the custody of the department of correctional services, as the case may be."). In any event, prior to the scheduled hearing, the State Division of Parole lifted plaintiff's parole warrant on May 12, 2003. In accordance with its practice, the City DOC released plaintiff from custody on that date. It thus appears that plaintiff was kept approximately two months beyond his maximum parole expiration date.

**DISCUSSION**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *R.B. Ventures, Ltd. v. Shane*, 112 F.3d 54, 57 (2d Cir. 1997) (quoting Fed. R.

Civ. P. 56(c)). Summary judgment may also be granted when the opposing party fails to establish an element essential to that party's case and on which that party would bear the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 321 (1986); *Distasio v. Perkin Elmer Corp.*, 157 F.3d 55, 61 (2d Cir. 1998). In reviewing the record, the district court must assess the evidence in "the light most favorable to the non-moving party," resolve all ambiguities, and "draw all reasonable inferences" in its favor. *Am. Cas. Co. v. Nordic Leasing, Inc.*, 42 F.3d 725, 728 (2d Cir. 1994); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, (1986). To survive summary judgment, the non-moving party cannot rely on mere allegations, denials, conjectures or conclusory statements, but must present affirmative and specific evidence showing that there is a genuine issue for trial. *See Anderson*, 477 U.S. at 256-57; *Gross v. Nat'l Broad. Co.*, 232 F. Supp. 2d 58, 67 (S.D.N.Y. 2002).

The only claim currently pending against the City is one for false imprisonment. Plaintiff here appears to allege that such a cause of action will lie against the City because of a failure to ensure that state parole violators are not held beyond the maximum expiration date of their sentence without the commencement and conclusion of their final parole revocation hearing. Plaintiff, however, ignores the evidence the City has proffered that it dutifully produced plaintiff for his hearing on two occasions, and does not counter the City's contention that it "has no role in the scheduling of the conduct of parole revocation hearings," nor in the adjournments thereof. (Def.'s Mem. at 11.) In order for a governmental entity to be liable, the plaintiff must show that an identified municipal practice or policy was the "moving force [behind] the constitutional violation." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). In doing so, the plaintiff must proffer facts which show that the City or departmental policy or custom "*directly* caused the plaintiff's constitutional rights to be violated." *Dion v. City of Utica, N.Y*, 2005 WL 1174065, at *3 (N.D.N.Y. May 10, 2005); *see also Batista v. Rodriguez*, 702 F.2d 393, 397 (2d

4

Cir. 1983) ("Absent a showing of a causal link between an official policy or custom and the plaintiffs' injury, *Monell* prohibits a finding of liability against the City.… The mere invocation of [a] pattern or plan [will] not suffice without this causal link.")

Here, plaintiff's complaint alleges that defendant City "failed to implement any policies to ensure that the continued imprisonment and confinement of parole inmates, such as Dupree, is lawful, justified and proper under applicable law." (Comp. ¶ 23.) Assuming the failure to ensure that a state agency follows its own procedures adequately identifies a "policy" under *Monell*, plaintiff points to a single instance of delay, his own, to establish the existence of such a policy. It is well-established that "a single incident in a complaint … does not suffice to show a municipal policy." *Ricciuti v. New York City Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991); *see also City of Oklahoma v. Tuttle*, 471 U.S. 808, 823-24 (1985) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker."). Plaintiff cannot show that such a policy existed on these facts, nor that the City was deliberately indifferent here to post-expiration date delays such as that experienced by Dupree. "To prove such deliberate indifference, the plaintiff must show that the need for more or better supervision to protect against constitutional violations was obvious. An obvious need may be demonstrated through *proof of repeated complaints* of civil rights violations; deliberate indifference may be inferred if the complaints are followed by no meaningful attempt on the part of the municipality to investigate or to forestall further incidents." *Vann v. City of New York*, 72 F.3d 1040, 1049 (2d Cir. 1995) (emphasis added.)

Moreover, plaintiff cannot make out its *prima facie* case of false imprisonment under Section 1983 against the City. In order to establish such a claim, "plaintiff must demonstrate that

5

defendant intended to confine him, he was conscious of the confinement, he did not consent to the confinement, and the confinement was not otherwise privileged." *Shain v. Ellison*, 273 F.3d 56, 67 (2d Cir. 2001); *Curley v. AMR Corp.*, 153 F.3d 5, 13 (2d Cir. 1998). Plaintiff here, however, was lawfully detained pursuant to a facially valid warrant issued by the New York State Division of Parole. "If the parole officer having charge of a … paroled … person … shall have reasonable cause to believe that such person … has violated one or more conditions of his presumptive release, parole, conditional release or post-release supervision, such parole officer shall report such fact to a member of the board of parole … and thereupon a warrant may be issued for the retaking of such person and for his temporary detention in accordance with the rules of the board ... A warrant issued pursuant to this section *shall constitute sufficient authority* to the superintendent or other person in charge of any jail, penitentiary, lockup or detention pen to whom it is delivered to *hold in temporary detention the person named therein*." N.Y. Exec. Law § 259-i(2)(c) (emphasis added).

It is settled that such a privileged confinement will not give rise to an action against the entity that detained plaintiff. *See McDay v. City of New York et al.*, No. 03 Civ. 05277 (S.D.N.Y. Jan. 25, 2005) (dismissing false imprisonment claim against the City where the confinement was privileged due to a parole warrant that the City defendants "were required to honor."); *Coley v. Harmer*, 2001 WL 209905, at *2 (W.D.N.Y. Feb. 26, 2001) (dismissing false imprisonment claim under Section 1983 in part because the "facts remain that … plaintiff was arrested and remanded—by judicial order—into the custody of the Orleans County Sheriff on a warrant not precipitated by any defendant…. In light of these facts, it is plain that—at the very least—plaintiff cannot demonstrate that confining her in the Orleans County Jail was not otherwise privileged."); *Barnes v. City of New York*, 1998 WL 19485, at *4-5 (E.D.N.Y. Jan. 20, 1998) (noting lawfulness of City Defendants' detention of a plaintiff "on the basis of the [parole

6

violation] warrant and [a police officer's arrest]"); *United States ex rel. Bailey v. Askew*, 486 F.2d 134 (5th Cir. 1973) (jailers immune from suit for damages under Section 1983 upon an assertion of an illegal confinement, as "it would be improper if those who are obliged to carry out those orders of commitment would be subject to such an action ... a jailer cannot be held liable for an error in an order of commitment which is patently proper").

For the foregoing reasons, the City's motion for summary judgment [20] is granted.

SO ORDERED.

Dated: New York, New York
       March 3, 2006

Richard J. Holwell
United States District Judge